UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

| | | |
|---|---|---|
| THE CINCINNATI INSURANCE COMPANY, | ) ) ) | |
| | ) | Civil No. 5:19-137-JMH |
| Plaintiff, | ) | |
| | ) | |
| V. | ) | |
| | ) | **MEMORANDUM OPINION** |
| CLARENCE J. MICHEL, JR., | ) | **AND ORDER** |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

** ** ** ** **

This matter is before the Court on Interpleader-Defendant PBK Bank Inc.'s ("PBK Bank") Motion for Judgment on the Pleadings against Defendants (1) Cash Village NY, LLC; (2) Empire Funding; (3) Ace Funding Source, LLC; (4) Kash Kapital; (5) Clarence J. Michel, Jr.; and (6) Jamie L. Michel. (DE 35). For the reasons that follow, PBK Bank's Motion **(DE 35)** is **granted.**

**I.**

PBK Bank is the mortgagee under the insurance policy issued to Clarence J. Michel and Jamie L. Michel ("the Michels") by Plaintiff, the Cincinnati Insurance Company, bearing policy number H01 0886754, for the policy period beginning on October 29, 2018 through October 29, 2019. (DE 1, ¶ 24 (Complaint); DE 1-4 at 4 (Homeowner Declarations); DE 1-5 (Mortgage)). In January 2019, the Michels submitted a claim under the policy, after their barn in

Lancaster, Kentucky sustained significant fire damage. (DE 1, ¶ 24, 27).

On April 2, 2019, Plaintiff filed this Interpleader Complaint, naming various Defendants. Plaintiff's Complaint indicated that, upon investigation of the Michels' claim, it discovered

> a number of liens, judgments and lis pendens against Clarence Michel, Jr., as well as several business entities associated with him on which he had apparent personal liability. These liens were from several states, including Kentucky, Oklahoma, New York, Iowa, and Florida.

(*Id.*, ¶ 28). Plaintiff sought to have those entities with rights against Michel be required to interplead and settle their claims to the proceeds. (*Id.*, at 12). On April 11, 2019, on the plaintiff's motion, the Court ordered the proceeds, totaling $739,759.44, to be deposited into the Court registry. (DE 6; DE 8).

PBK Bank, as mortgagee under the Michels' policy, was one of the first defendants named in the Complaint as an entity with a potential interest to the proceeds. (*Id.*, ¶ 29; *see* DE 1-4 at 4; DE 1-5: Copy of Mortgage). PBK Bank filed its Answer on May 1, 2019 asserting its interest in the proceeds, as reflected by having recorded its mortgage in the Garrard County Clerk's Office. (DE 10; DE 29). As of February 18, 2020, a total sum of $1,928.241.03

was due and owing on the debt, including interest and fees. (DE 1-5 at 2; DE 34-3).

On February 20, 2020, PBK Bank filed this motion for judgment on the pleadings against Defendants Cash Village NY, LLC; Empire Funding; Ace Funding Source, LLC; Kash Kapital; Clarence J. Michel, Jr.; and Jamie L. Michel. Of these defendants, only Defendant Jamie L. Michel has filed an Answer to the Complaint and has responded in opposition to PBK Bank's motion for judgment on the pleadings. (*See* DE 39).

## II.

A motion for judgment on the pleadings under Rule 12(c) requires the same "'standard of review employed for a motion to dismiss under Rule 12(b)(6).'" *Florida Power Corp. v. FirstEnergy Corp.*, 810 F.3d 996, 999 (6th Cir. 2015) (quoting *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008)). "After the pleadings are closed . . . a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Under such a motion, "'all well-pleaded material allegations of the opposing party must be taken as true, and the motion may be granted only if the moving party is [] clearly entitled to judgment.'" *Tucker*, 539 F.3d at 549) (quoting *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007)). However, the Court "'need not accept as true legal conclusions or unwarranted factual inferences.'" *Winget*, 510 F.3d at 581-82 (quoting *Mixon v. Ohio,* 193 F.3d 389, 400 (6th Cir.

1999)). "A motion brought pursuant to Rule 12(c) is appropriately granted 'when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law.'" *Tucker*, 539 F.3d at 549 (quoting *Winget*, 510 F.3d at 582).

**III.**

PBK Bank moves the Court for judgment on the pleadings against the following remaining[1] defendants in this action: (1) Cash Village NY, LLC; (2) Empire Funding; (3) Ace Funding Source, LLC; (4) Kash Kapital; (5) Clarence J. Michel, Jr.; and (6) Jamie L. Michel. PBK argues that its interest in the Policy Proceeds is superior in interest than the interests of these defendants.

Kentucky is a "race-notice" jurisdiction. In order for a mortgage to have first priority, "one must not only be the first to file the mortgage, deed or deed of trust, but the filer must also lack actual or constructive knowledge of any other mortgages, deeds or deeds of trust related to the property." *Wells Fargo Bank, Minn., N.A. v. Commonwealth, Fin. & Admin., Dep't of Revenue*, 345 S.W.3d 800, 804 (Ky. 2011); *see also Mortg. Elec. Registration Sys., Inc. v. Roberts*, 366 S.W.3d 405, 407-08 (Ky. 2012). Under Kentucky common law, the first creditor to file a lien enjoys the

---

[1] Every other named party in the Complaint has either been dismissed (*see* DE 26; DE 33); had default judgment entered against them (DE 28); had summary judgment entered against them (*see* DE 51, 54); filed a Disclaimer of Interest in the proceeds (*see* DE 32); or formally agreed not to assert or claim its purported interest in any of the proceeds held in the Court registry (*see* DE 46).

first right to the property. *Wells Fargo*, 345 S.W.3d at 804. This rule is also known as "first in time, first in right." *Id.* (citing *Truck Corp. of Ky. v. Hurry Up Broadway Co.*, 1 S.W.2d 990 (Ky. 1928) ).

**A.**

Some background information on these defendants and their purported interests is key. On June 13, 2017, Kash Capital obtained a Judgment against Clarence J. Michel in the amount of $29,736.60 in the Supreme Court of New York, County of Westchester. (DE 1, ¶ 41; DE 1-16). On June 19, 2017, Ace Funding Source, LLC similarly obtained a Judgment against Clarence Michel, in the amount of $228,353.64 in the Supreme Court of New York, Erie County. (DE 1, ¶ 38; DE 1-23). The next day, on June 20, 2017, Empire Funding obtained a Judgment against Mr. Michel in the Supreme Court of New York, County of Westchester, in the amount of 87,242.21. (DE 1, ¶ 37 ;DE 1-13). And finally, on August 22, 2017, Cash Village NY, LLC obtained a Judgment in the Supreme Court of New York, Queens County, in the amount of $13,894.22, against Clarence Michel, Jr. (DE 1, ¶ 36; DE 1-12).

Here, while the Complaint indicates that each of the above defendants obtained a Judgment in New York state against Mr. Michel in the summer of 2017, PBK Bank argues that the defendants' interests are inferior because there is no indication that each defendant did anything to preserve its interest in the proceeds.

In other words, there is nothing in the Complaint – let alone in the record — that would indicate that each defendant's state judgment was domesticated in Kentucky or that each defendant's respective judgment lien was filed in Garrard County, Kentucky. As such, it "is insufficient to create a lien on the Subject Property." (DE 35 at 7).

In support of this assertion, and unlike the above defendants, PBK Bank adds that it recorded its mortgage in the amount of $2,105,357.23, on May 26, 2017, in Garrard County, Kentucky. (DE 1, ¶ 29; DE 1-5). Therefore, even if the defendants had attempted, or will attempt to assert an interest in the proceeds, PBK argues that its interest is superior because it was filed prior to the defendants' having obtained the New York state judgments, and thus, is superior.

In this case, the facts in the pleadings demonstrate that the interests of Defendants Cash Village NY, LLC; Empire Funding; Ace Funding Source, LLC; and Kash Kapital are inferior to the interest held by PBK Bank in the Policy Proceeds. Defendants have had ample time and opportunity to assert their interests in the subject property[2] or to oppose PBK's Motion. Further, even if the parties had taken the steps required for it to acquire and/or preserve its

---

[2] The record demonstrates that the Defendants were properly served with a copy of the Complaint and summons on or before April 2, 2019. (DE 5).

interest in the property and the proceeds, the parties' judgments

were not obtained until after PBK Bank's mortgage was recorded.

Accordingly, based on the pleadings, the Court finds there is

no existing material issue of fact. *See Tucker*, 539 F.3d at 549.

The priority of PBK Bank's mortgage is the superior interest.

**B.**

Finally, PBK Bank asks the Court to find that it has a

superior interest in the full amount of the Policy Proceeds held

by the Clarence and Jamie Michel because the debt secured by the

Michels' mortgage far exceeds the amount of the proceeds. (DE 35

at 7-8). As grounds, PBK Bank points to its status as mortgagee of

the Michels' insurance policy (DE 1-4 at 4), and the mortgage

clause in the policy, which states:

> If a mortgagee is named in this policy, "we"
> will pay a "physical loss" under Section **I** –
> Coverage **A** or **B** to "you" and the mortgagee as
> interests appear.

(*Id.*, §  I.D.12.a.). PBK Bank states that, as of April 11, 2019,

there was $1,990,383.00 owing on the debt secured by the Mortgage,

and as such, it should be entitled to the full amount of the

proceeds.

Jamie Michel, as one of the named insureds on the policy, has

filed a response in opposition to PBK Bank's argument that it

should be entitled to the full amount. (DE 39). While Ms. Michel

concedes and acknowledges that PBK Bank is entitled to a portion

of the policy loss proceeds, she argues that PBK Bank's request for the *whole* amount is in excess and that the Michels should be entitled the superior interest. (*Id*. at 3-4).

As an initial matter, the Court considers the Michels' secured debt, which lists: (1) a principal amount of $2,105,357.23, (2) a note date of May 26, 2017 and (3) a final maturity date of May 26, 2035. (DE 39-1 at 2). The collateral evaluated to secure payment consists of a forty-nine acre farm, a 5250 square foot residence, and a barn/auxiliary office building. As of March 6, 2020, Jamie Michel contends that the outstanding principal balance of the mortgage loan stands at approximately $1,910,318.20 – contrary to the $1,990,383.00 alleged by the bank — and that it is currently "being repaid … in compliance with [the] terms of payment." (DE 39 at 2).

Michel further asserts that, prior to the debt being secured, PBK Bank requested and obtained an appraisal of the entire collateral. While the final estimated value was appraised at $2,750,000.000 (*see* DE 39-2 at 1, 3), Michel contends that the barn/auxiliary office was only appraised at a "contributory value" of $200,000. (*Id*., at 13). And while, The Cincinnati Insurance Company determined that $739,759.44 was owed to the Michels after the fire, Michel states it was nevertheless contemplated that any balance would be payable to them for the loss of the contents and any personal property lost in the fire. (DE 39 at 3).

Michel concedes that the policy of insurance was obtained for the purpose of satisfying the covenant contained in the security agreement. (*Id*. at 1; *see* DE 39-1 at 8). In relevant part, the security agreement affirmatively acknowledges the Mortgagor's duty to

> keep [the] Property insured against loss by fire, flood, theft, and other hazards and risks reasonably associated with the Property due to its type and location.
> …
> **[And u]nless otherwise agreed in writing, all insurance proceeds shall be applied** to the restoration or repair of the Property or **to the Secured Debt, whether or not then due, at Lender's option.**

(DE 39 at 8-9). From this, PBK Bank argues that this "clear language" allows for the entirety of the insurance proceeds to be applied to the Michels' loan which is secured by the mortgage. (DE 42 at 2).

*Alternatively*, PBK Bank argues that it should at least be entitled to an amount of $512,000.00. (DE 42 at 3). The bank clarifies that, prior to this interpleader action being filed, representatives from the Michels and the bank reached an oral agreement to which they agreed that PBK Bank would apply $512,000.00 of the Policy Proceeds to the Michels' loan. (*Id*.). Notably, in Jamie Michel's response, she does concede that, at the bank's insistence, "a sum in excess of $500,000.00" [was to] be

paid to the bank … and applied to the payment of the mortgage debt." (DE 39 at 3).

In support of PBK's concession, it asserts that Jamie Michel's argument for limiting the bank's priority to $200,000 is "flawed and inappropriate" as a correct measurement of the barn's current valuation because it is outdated, given the *time* it was evaluated, and further, at the time the structure was evaluated, the interior of the barn was unfinished. The bank also faults the "sales comparison approach" used to evaluate the contributory value of the property, as it is "doubtful" there existed other comparable structures in Garrard County at the time. (DE 42 at 4). Finally, PBK Bank states that the $200,000 valuation is incorrect because the Michels' Policy contained a "specific endorsement" that raised the limit of insurance for the barn structure to $900,000. (*Id.* at 3-4; *see also* DE 1-4 at 2-3, 54 ).

In conclusion, the Court observes the existence of contradictory positions on both sides. On the one hand, Jamie Michel concedes that PBK Bank is entitled to a sum of the policy proceeds, just not the full amount. But on the other hand, Ms. Michel concedes that, prior to the interpleader complaint being filed, the parties agreed to PBK Bank's claim of "an excess of $500,000.00 … [to be] applied to the payment of the mortgage debt." (DE 39 at 3).

On the other side of the fence, PBK Bank contends that it is entitled to priority of the full sum of $739,759.44 over the Michels' joint interest, given the "clear language" in the mortgage clause of the policy declaration. (DE 42 at 2; DE 39-1 at 8-9). In the alternative, PBK asserts that it should, at least, be entitled to $512,000.00 on account of the parties' oral agreement, as well as the valuation being outdated, flawed, and inappropriate to use as a correct measurement.

As of March 6, 2020, the Michels' mortgage loan has a sum of approximately $1,910,318.20. (DE 39 at 2). Unfortunately, Jamie Michel's argument that she is entitled to a superior interest in the remaining balance, because the mortgage remains fully secured by the lien on the Michels' forty-nine acre farm and residence, is unconvincing. Prior to the interpleader complaint being filed, the parties, albeit orally, agreed to a sum of the proceeds being used towards the remaining balance. This agreed sum exceeded well over $200,000.00. And notably, Ms. Michel overlooks the provision in the mortgage covenant of the security agreement; in particular, the provision regarding the lender's sole option to choose whether or not to use any awarded insurance proceeds towards the restoration or repair of the property, or to the secured debt. (DE 39 at 9).

Therefore, the Court finds it is proper for PBK Bank to be entitled to superior priority over the insurance policy proceeds.

**IV.**

Accordingly, for the reasons set forth above,

IT IS HEREIN ORDERED as follows:

(1)   Defendant-Interpleader PBK Bank Motion for Judgment on the Pleadings (DE 35) against Defendants Cash Village NY, LLC; Empire Funding; Ace Funding Source, LLC; Kash Capital; Clarence B. Michel, Jr.; and Jamie L. Michel is GRANTED.

(2)   PBK Bank, Inc. HOLDS a prior and superior interest than the above defendants to the Policy Proceeds, totaling $739,759.44, deposited into the Court registry on April 11, 2019.

(3)   PBK Bank, Inc. is GRANTED the right to receive the entire amount of the insurance proceeds,

(4)   A corresponding judgment shall follow.

IT IS SO ORDERED.

This the 12th day of November, 2021.



Signed By:

Joseph M. Hood

Senior U.S. District Judge